Thank you so much. Mr. Sussman for Ms. Tyson, and you reserve your two minutes for rebuttal, Mr. Sussman, and you begin whenever you're ready to go. Thank you very much, Your Honor, and may it please the Court, Michael Sussman arguing for Ms. Tyson, as the Court knows, is an African-American female who was a police officer starting in 2006 for Ramapo. She was injured in October of 2013. She fully qualified thereafter for light duty, sought light duty according to JA 1139 paragraph 4 in the spring of 2015, was denied light duty, was terminated in June of 2016 under Section 71 of the New York State Civil Service Law. The problem of this case is a comparison between her circumstances and those of a number of Caucasian male officers who were, in fact, allowed lengthy periods of light duty. These individuals, Your Honors, include Officer No. 6, who was not granted 207C status between 2016 and 19, but maintained on salary for that period of time, who is one of the comparators, not the only comparator. If you look at docket No. 108, our briefing below, you'll notice that we discussed extensively a number of the officers. But, Mr. Armstrong, with Officer 6, wasn't he eventually terminated, or at least wasn't he told that he was going to be terminated? Eventually, but it was a much lengthier period of time than my client, Your Honor, and there's no explanation in the record for why he was given such a grace period compared to my client. And when viewed in the context of other officers like No. 2, 3, and 4, No. 2 was, and again, I'll just give citations just to know it's a lengthy record. If you look at 1167 of the Joint Appendix, Paragraph 65. Okay, I'm sorry, but both 2 and 3 were never on non-GML leave for more than a year. But that's not a legitimate interest here, and that's the issue in this case as well. It's not a legitimate interest under the ADA. This is a title, this is an equal protection case, but still under McDonnell Douglas, an entity cannot defend by eliciting a reason that's not a legitimate reason. It's not legitimate to say, and even their own GO 705 policy acknowledges this. No, no, I think I understand, sir. But what I'm saying is why are these appropriate comparators? They're appropriate comparators because they couldn't work and they were qualified for light duty. That's what makes them appropriate comparators. It's immaterial legally the ideology of their inability to work. The defendant seems to believe, the appellee seems to believe, that because they were out on a 207C, that's significant. But it's insignificant legally for several reasons. In New York, and we cite the case Stewart, you can terminate an employee, police officer, who's on 207C status for a year- Wait a second. I'm not following your argument. And I think you would agree, officers 1 through 5, 7 through 11, all were on, had 207C benefits following a line of duty injury. That's agreed, right? That's agreed. All right, so if an employer says, we'll offer light duty to those individuals, and they don't do it based upon race, gender, that's their policy, how is that discriminatory? Because under McDonnell, Douglas, your honor, the step which asked them to articulate a legitimate non-discriminatory reason- Isn't that a non-discriminatory reason? It's not legitimate. Why is it not? Because it violates the ADA. That's why it's not legitimate. You can't have a reason that's adduced that is itself an illegal reason. You cannot say to officers- Is it an ADA claim? It's not an, but this is the point, it's not an ADA claim. It's an ADA violation, but it's not an ADA claim. It's an equal protection claim in the context of officers because in order for them to have a legitimate reason, the reason has to be a legally permissible reason. That's the problem here. And it's not a legally permissible reason. Moreover, the treatment of number six shows that they didn't apply that reason even if it was that reason consistently. And the other part that makes this important is that under New York State law, with regard to 207C, 207C individuals are treated with respect to section 71, which is a termination provision, just like officers who are not on 207C. The Stewart case, which is the third department case deciding this, says that they're each equally terminable. So, Your Honor, just as an example, if the town says we want to save money, which is usually what goes on in these cases, we have officers off duty for nine years and we're paying them, which is what was happening here, we don't want to pay them. I mean, that's something that's legitimate and understandable. But that's not what this record supports. What this record supports is that they kept these people on, even though they were terminable under New York State law for all this period of time, which undercuts any logic. When did she ask for a light duty assignment? She asked for it in the spring of 2015, Your Honor, through medical notes, which they acknowledged were repeatedly submitted making that request. Where's that in the record? It's in her affidavit, Your Honor, 1138 and 39, paragraph 4. And it's also, if you look at the counterstatement of facts, they don't deny that she repeatedly asked for light duty. They acknowledge that she asked for it through medical notes, which she submitted. There's no dispute as to that. I don't really believe it's a legitimate dispute. And, in fact, the district court judge, to their argument that she wasn't qualified, which was one of their two arguments on summary judgment, denied that and said she was qualified. She was as qualified as the other individuals. I'm sorry, but you agree that the council members are the only remaining defendants, right?  And they're not responsible for her not getting the light duty, right? I mean, I could imagine a scenario in which getting denied light duty was discriminatory. But in any event, the council members, which are the only people that are still in the action, are not responsible for that act, even if it were discriminatory, which I'm not conceding that you've proven. I understand. So my argument is the town and the councilmen are still in the case, that the police department has responsibility with respect, because the town, obviously, is represented by the ultimate final decision-making of the council. The council, the town board, it's called. They are the operative, functional institution for the government. The government is the town. Do you agree that they were not the decision-maker as to why she did not get light duty? They didn't even know. Well, I don't believe they didn't know. That it was requested when it was denied. Is that correct? At the time, it was denied. But at the point that the decision was taken, it had already been argued that she had been effectively discriminatorily denied the light duty, and that was the causative element here of the termination. The two are linked, and that's where we cite the Austin case. Because in the Austin case, you have a similar situation. You have a situation of an adverse action, and that adverse action is predicated on another earlier adverse action. And the two are interlinked. That's not the question. The question is, are the people still in the case the ones responsible for what you claim was the precipitating discriminatory act that was then followed by a second discriminatory act? But the council had no role with the light duty. Is that correct? I agree with you. I don't think the council had that role. And the council right now are the only defendants in the case. Is that correct? I believe the town is. But the council are the only individual defendants in the case. You're correct. Brower, the police chief, was excluded from the case. I think that's correct. But again, you get to have a circular situation. Because what ends up happening is the person who made one decision is not the ultimate decision maker, but they're relying on the fact that she's been out of work for one year. She's been out of work for one year because she was denied light duty. Right, but if the individual police officers were in the case, then it would be simpler to imagine what relief for you would look like. I don't think so. Because then they'd be arguing those individual disputes weren't part of the decision, or they'd terminate. So you're going back around in a circle. The people who terminated were the town board who, on the record, as we understand it, did know the situation that she'd been denied the light duty because it had been put before them in letters, et cetera. So in any event, I see my time is up. I reserve two minutes and thank you. Thank you, Mr. Sussman. We'll hear from Mr. Dorfman. Good morning. May it please the court. Leo Dorfman for the defendant appellees. The town makes a rational and very legitimate distinction, as I think most police departments do, between those officers who qualify for line of duty injury, 207C status, and those officers who don't. And the reason for that is that 207C specifically provides that officers injured in the line of duty must continue to receive salary, wages, medical, and hospice care until either the disability dissipates, or they retire, or if they refuse medical treatment, or if they refuse light duty status. So the police department has to keep paying their wages, whether they are terminated or not. That's not the question. The question was, was she discriminatorily denied working in line, and was she discriminatorily denied being assigned light duty? Can you talk to me about why Officer Six isn't a comparator? Are you conceding that Officer Six is a comparator? Judge, we think that Officer Six is an excellent comparator in terms of the termination decision itself. Officer Six- Right, but three years later, right? Later than she did. We don't have any evidence in the record for why the town waited a little bit longer to terminate Officer Six- Right. So right now, you are conceding that there's at least one white male who got extended benefits while slipping on ice, and his GML was approved, but only for a few weeks, but he stayed on disability without GML benefits for more than a year. He did stay on for more than a year without GML 207C, but so did the plaintiff. She didn't have 207C benefits for, I believe, more than two years before she was terminated. Officer Six didn't have GML 207C- For more than three. And why is he not enough? He's not enough- At least at this stage to suggest that she was being discriminatorily treated. He's not enough because he's not enough- I mean, you guys gave her settlement agreements, right, so that he could retire. Why wasn't she off of that? She didn't come to us to negotiate that. She could have come and tried to negotiate that. Officer Six was in a very different position because Officer Six was only a few months from retirement at the time that the town moved to terminate him. I think that he's not a good comparison because the question isn't here how long we waited to terminate. The question is whether we terminated or whether we didn't terminate. The question really is whether the plaintiff here was entitled to indefinite light duty until she retired some six years later. And without 207C benefits, there's nothing that would have entitled her to that duty. She wasn't entitled to indefinite light duty. Officer Six wasn't entitled to indefinite light duty. It could be. Eventually you terminated someone. If there was evidence that people of a certain race or gender were terminated immediately while people of a different race or gender were let go for years and years and years, that could be problematic, right? Eventually they were terminated, but they were allowed to stay on for a long time. That would be a problem, right? It might be a problem, but here I don't think it's a material difference. So you're saying the two years versus three years is not enough to show any type of discriminatory intent. That's right. And ultimately it's not just finding one comparator with some kind of difference in the treatment. It has to be not just a material difference, but also that only gets the plaintiff so far. Aside from just having some suggestion of different treatment, the plaintiff has to then turn around and make an affirmative showing that race was the distinguishing factor. So you're saying for Officer Six it was because he was close to retirement they're trying to figure out what to do with him? Yes. And it's not up to us to come and explain every small difference in treatment. It's up to plaintiff not just to raise the inference that there was some difference in treatment. Plaintiff has to put forward some evidence that it was race-based or that it was gender-based. Can I follow up on Judge Kearse's question, Mr. Sussman? I thought you were contesting whether or not she requested it. He said you agree that she requested the light duty. What's your position on whether she requested the light duty or not? It's our position that she did not request the light duty. She did submit notes from her doctor that suggested she might be able to start performing light duty, but she never submitted a request to do so. And by the way, Judge, I don't think- Is there a formal form or something that you fill out if you want light duty? There's not a formal form, but she could submit a letter. It's not something that officers generally do because staying home and not working is a reasonable accommodation that most officers are more than happy to take advantage of. The light duty assignment is something that the town can impose to get an officer back to work and being productive where otherwise they might be able to stay home. What about these other officers? Do they put in a letter requesting light duty or what? I don't think we have anything in the record about that, Judge. I think for the officers who had line of duty status, the way that they- But that's for the officers who were out on extended line of duty. I should say also that the modified or light duty that's available under- There is a modified light duty that's available under the general order, and then there's a light duty that is available under 207C as a statutory matter. The way the town uses the modified transitional duty under the general order is in a limited circumstance in a specifically transitional way to get officers who were out of work who have a definite return date back to work. It's not something that officers can take advantage of in both senses of the term to stay employed indefinitely even though they can't perform the essential functions of their job. Here, Ms. Tyson is saying she should have been allowed to remain employed indefinitely even though she couldn't perform the essential job functions of a police officer. But she can't point to any other officer who didn't have line of duty injury 207C status who was able to remain employed indefinitely in that way that she claims. What's your response to that? I know there's no ADA claim, but he says this is not a legitimate reason because regardless of the 207C issue that she should- I think his argument is that she should be getting the opportunity to have light duty, I guess, and that employers shouldn't be denying her that. It might be the plaintiff appellant's position. It might be their thinking that this is not the best way to run a business or that this is not the best way to run a town. But it's very much a legitimate distinction that is made under the law, which distinguishes- the law distinguishes between officers who have 207C status and who do not. That's the point of 207C, and the town just goes by that law. If there are no further questions, thank you. Thank you. Mr. Sussman, you have two minutes and about. The ADA requires reasonable accommodation. They provided reasonable accommodation to officers with line of duty injuries. They did not provide a reasonable accommodation to my client. That's the law. The law does not distinguish between the two. It does not say the ideology of the injury under the ADA or its regulations allows you to say one is okay and the other is not. Did you bring an ADA claim? I did not, but I didn't have to, because the point is you need a legitimate, nondiscriminatory reason. You don't have a legitimate reason. You can't have a reason- this Court's never said in any of its cases in pretext analysis that you can have an unlawful reason which becomes legitimate. That would be a dangerous precedent. That's what they're arguing for. With regard to his point about transitional, you have people here who are on this status for nine years, six years, nine years. Look at the record with regard to Offices 2, 3, and 4 and come to the conclusion that this is transitional. It's not transitional. It's being utilized for a certain select group of officers to allow them to gain all the benefits of their employment. That's what it's allowing them to do. With regard to Officer 6, two of your honors raised questions about that. There's no affidavit in this record from the defendant articulating any good faith basis for an exception with regard to 6. Search the record. There is no affidavit. There's an affidavit from a gentleman named Lee. It does not address the issue. It simply points out that he's an individual who's one of the people on the list. We knew that already. So for him to come up here and say the reason is, or for your honors to say the reason is X, Y, and Z, why isn't there a statement, as Title VII law requires, articulating their reason? I know, but if every other person in this situation, they follow the same procedure, and there's one person where for two years versus three years, we ran down a drop in three years versus two years after the one year expiration date, why should we, how could a rational jury say that's race or gender? Because a rational jury could see the entire pattern of how white officers are treated in this department over time. And a jury- How is one a pattern, though? That's not a pattern. One is not a pattern. Judges, as we pointed out in our Rule 56.1 counterstatement, if you look at every single officer, every single officer, and I understand Judge Karas's decision disallowed us from doing it at the point I got into the case, because Judge Karas said these things were too old in some sense. Every single officer was granted 207C status for injuries which were, at best, marginal injuries. Getting a deer tick, getting a deer tick and keeping someone out for a two-year period- You had an Article 78 where you contested the 207C issue, right? The Article 78 was on a different issue. The Article 78 challenged termination issue, but not on the ground that we're speaking about now. The other thing I would suggest is one comparator is sufficient, and that comparator, Judge Karas wrote an excellent decision in Lawrence versus Northwell Health, which suggests the comparator analysis that would be appropriate in this case. Where there's been no articulation by a defendant on summary judgment, and that's what we're on. You cannot simply grant summary judgment based on speculation as to what their reasons might have been, which saves them. Thank you. And the request issue, even though she had notes that may have indicated she was capable of doing- That's why she submitted the notes, Judge. Why would you submit notes if you weren't making the request? As you said, there is no film. The practice of the department is you submit a note making a request and showing your capability for 207C. She did that on three or four occasions in a five month period and never was given 207C. She submitted a note with the records? No. The doctor's notes make that statement she is qualified for 207C. That's why she's qualified for light duty. That's why she submitted them. That's the whole purpose of the submission. All right. Thank you. We'll reserve decision. Have a good day. You too.